UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**CHARLES R HUGHES**,<br><br>　　　　Debtor.<br><br>**VALLEY BANK OF RONAN**,<br><br>　　　　Plaintiff.<br><br>-vs-<br><br>**CHARLES R HUGHES**,<br><br>　　　　Defendant. | Case No. **08-60003-12**<br><br><br><br><br>Adv No. **08-00030** |

**MEMORANDUM OF DECISION**

At Butte in said District this 15th day of May, 2009.

Pending in this adversary proceeding are motions for summary judgment filed by both the Plaintiff Valley Bank of Ronan ("VB") (Docket No. 144) and by Defendant Charles R. Hughes (Docket No. 145); VB's motion in limine to exclude or limit expert witnesses Cynthia Shea ("Shea") and Anne Robinson ("Robinson") (Docket No. 130), and the Defendant's motion for protective order (Docket No. 133) to prevent a third deposition of the Defendant. Objections were filed in response to all of the pending motions. Oral argument on the motions was held at Missoula on May 7, 2009. VB was represented by attorneys David B. Cotner ("Cotner") and Trent N. Baker of Missoula. Defendant was represented by attorney G. Patrick Hagestad

1

("Hagestad") of Missoula. No testimony or exhibits were admitted. The Court took the pending motions under advisement after oral argument concluded. After review of the record and applicable law, for the reasons set forth below all pending motions will be denied by a separate Order.

This Court has "related to" jurisdiction of this adversary proceeding, which the Defendant removed from the Montana Twentieth Judicial District Court, Lake County, under 28 U.S.C. § 1334(b). Furthermore, the parties' counsel agreed at a hearing on May 15, 2008, that the remaining matters are core proceedings and the Court has jurisdiction. The Court held a status conference, set pretrial deadlines and set trial originally to commence on January 20, 2009. The trial date was continued to February 27, 2009, and then continued again to commence on May 26, 2009 by Order entered on January 12, 2009 (Docket No. 112), which also set pretrial deadlines.

This adversary proceeding involves the Defendant's remaining claims for relief against VB, after remand from the Montana Supreme Court in *Valley Bank of Ronan v. Hughes*, 2006 MT 285, 334 Mont. 335, 147 P.3d 185. In *Hughes* the Court affirmed summary judgment granted in favor of VB by the district court on a promissory note between the parties, affirmed the district court's conclusion that VB did not violate any duty to Defendant under Montana's Uniform Commercial Code ("UCC"), and affirmed the court's exclusion of Shea's testimony regarding the UCC-defined standard of ordinary care prevailing in the area in which VB is located in Ronan, Montana. *Hughes*, ¶¶ 42, 45, 47. The Supreme Court reversed and remanded "for further proceedings" "to consider whether common law and equitable principles supplement the UCC-defined duty of ordinary care with respect to representations about the check settlement process." *Id.,* ¶ 29. At oral argument Hagestad stated on the record that the Defendant is no

2

longer asserting any claims based on provisions of Montana's UCC, and has remaining claims against VB based only upon negligence and negligent misrepresentation.

## BACKGROUND FACTS

The Montana Supreme Court set forth the following facts in its *Hughes* decision:

> The District Court's approach to the factual issues in this matter was set forth in its summary judgment order:
>
>> The facts set forth herein are Hughes' "version" of the facts. While several are contested by Valley Bank, the Court has assumed these facts to be true in analyzing the Motion for Summary Judgment presented by Valley Bank.
>
> On appeal, the parties have utilized the same framework. In its appellate briefing, Valley Bank urges us to "likewise ... test Hughes' facts and determine whether Valley is entitled to judgment as a matter of law." Except for an argument it makes in response to defenses raised by Hughes to foreclosure of the promissory note, wherein it asserts that Hughes has not raised a genuine issue of material fact, Valley Bank urges us to rule that it was entitled to judgment as a matter of law "assuming [Hughes'] facts to be true." Thus, except as otherwise noted, we consider the issues raised herein under that portion of the summary judgment standard of review, *see* ¶ 14, infra, which requires us to determine whether the movant is entitled to judgment as a matter of law.
>
> Lured by the promise of quick wealth, Hughes was conned by a " Nigerian scam." The swindlers promised Hughes a $3 million to $4.5 million commission for his aid in procuring agricultural equipment for import into Africa and then proceeded to bilk him for hundreds of thousands of dollars in advanced fees. At least some of the funds Hughes advanced were wired via the services of Valley Bank, resulting in a dispute over which party should bear the loss from the flimflam.
>
> On Friday, March 22, 2002, Hughes received four checks from one of the con-artists and deposited them into accounts Hughes held at Valley Bank. Two of them were "official" checks, and the other two were personal checks. One official check, for $1 million, was drawn on Colonial Bank. The other official check, for $500,000, was drawn on Firstar. The personal checks were for $62,000-drawn on the account of Maximilian H. Miltzlaff-and for $70,000-drawn on a Capital One credit card account held by Sarah Briscoe and Mary Bullard.

Prior to depositing the checks, Hughes requested that Nancy Smith, a cashier and officer of Valley Bank, verify the validity of the official checks. In his deposition, Hughes described his conversation with Smith:

> Well, my question was, how long do you have to hold money to have-how long do you have to hold these checks before they're sufficient funds; I think the bank calls them collected funds. And she said, these are official checks, Chuck. These two big ones are official checks. You will be transferring these? And I said I will be transferring a large sum. We'll have to determine next week what it will be. And she says, official checks, same as cash. You can do whatever you want to do.

Smith also assured Hughes that official checks were "just like" cashier's checks. Milanna Shear, another bank employee, told Hughes to believe whatever Smith said regarding the validity of the checks. According to the deposition testimony of Hughes' wife, Barbara, Hughes had told her that "everybody at the bank assured him that the checks would be good."

On Tuesday, March 26, 2002, Hughes delivered a written request to Valley Bank to wire $800,000 to Ali dh. Abbas, an accountholder at the Housing Bank for Trade and Finance in Amman, Jordan. Valley Bank executed the transfer no later than 1:51 p.m. on the same day. The transfer proceeded through two intermediary banks, Wells Fargo, near Denver, Colorado, and Citibank in New York, before being sent to Amman. Upon receipt in Amman, the funds were promptly withdrawn, never to be seen again.

At about 2:00 p.m.-approximately ten minutes after initiation of the transfer-Valley Bank and Hughes learned that one of the personal checks was being returned marked "nonsufficient funds." Hughes immediately requested the wire to be stopped. No later than 3:26 p.m. Valley Bank requested that Wells Fargo reverse the wire transfer. The record is unclear about what happened during the interim between Hughes' request for cancellation and Valley Bank's attempts to comply with the request. The efforts of the several banks involved in the transfer to reverse the transaction were unsuccessful, and the later discovery that the two official checks were counterfeit resulted in Hughes' account being overdrawn by $800,000.

Valley Bank subsequently exercised its right to charge back the account and collect the $800,000 from Hughes. Allen Buhr (Buhr), Valley Bank's president, met with Hughes on March 29, 2002, to discuss Hughes' liability and suggested at that time that Hughes could be involved in a criminal prosecution for fraud. On April 11, 2002, Hughes deposited $607,838, which he had withdrawn

4

from his retirement account, into the Valley Bank account. Also, on April 30, 2002, Hughes executed a promissory note to Valley Bank on behalf of his trust in the amount of $400,000, secured by mortgaged property. Of the $400,000 in proceeds generated by the secured note, $202,751.21 was used to pay off a previous loan against the mortgaged property, and the balance, $197,248.79, was applied to satisfy the charge-back liability in Hughes' account. Hughes was under the impression, given by Buhr, that the bank needed the note and loan agreement because it expected to be the subject of a government audit in the near future, and though Hughes thought that a new agreement might be reached after resolution of the "fraud situation," he understood that the loan may not be forgiven. The trust subsequently made the first interest payment on the note on August 1, 2002, though it was one month late. The trust made no other payments on the note, and Valley Bank sent a notice of default and acceleration on October 15, 2002. Hughes requested that the bank forebear foreclosure until the end of the year, and the bank complied. However, when Hughes failed to make any more payments on the note, Valley Bank initiated an action for judicial foreclosure. Hughes asserted counterclaims of negligence, negligent misrepresentation, constructive fraud, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and intentional infliction of emotional distress (which was later abandoned).

On April 15, 2005, the District Court granted Valley Bank's motion in limine to exclude Cynthia Shea as an expert witness for Hughes. In an order dated April 20, 2005, the District Court granted Valley Bank summary judgment on Hughes' counterclaims. On the same day, the District Court granted Valley Bank summary judgment on its claims regarding the promissory note. From these orders Hughes appeals.

*Hughes* at ¶ 6 through ¶13, 334 Mont. at 337-39, 147 P.3d at 187-189.

The decision of the Court in *Hughes* affirming the district court's grant of summary judgment in favor of VB on the note and UCC, is a final decision. The doctrine of collateral estoppel or issue preclusion precludes relitigation of issues actually litigated and determined in a prior suit. *Smith v. Schweigert* (1990), 241 Mont. 54, 58-59, 785 P.2d 195, 198. In *Smith v. Schweigert* the Court gave collateral estoppel effect to a previous suit which had been decided on summary judgment. *Id.* The Montana Supreme Court in *Boyd v. First Interstate Bank of Kalispell, N.A.* (1992), 253 Mont. 214, 218, 833 P.2d 149, 151, set out the 3 elements for

collateral estoppel as: (1) The identical issue raised and previously decided in prior adjudication; (2) final judgment on the merits was issued in the prior adjudication; and (3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication. The Ninth Circuit cited *Boyd* in *Troutt v. Colorado Western Ins. Co.*, 246 F.3d 1150, 1157 (9th Cir. 2001), and further noted that "the identity of the issues is the most crucial element of collateral estoppel" and means "that the exact same issue must have been litigated in the prior action."

In *Hughes* the Montana Supreme Court reversed and remanded for further proceedings on whether common law and equitable principles supplement the UCC-defined duty of ordinary care with respect to the representations about the check settlement process. *Hughes,* at ¶ 29, 334 Mont. At 345-46, 147 P.3d at 193. Hagestad admitted that only claims for negligence and negligent misrepresentation remain.

This Court is aware that VB contested several facts in the state court, which assumed the Defendant's facts to be true, and the Court will allow the parties to offer evidence expanding on Nancy Smith's and Milanna Shear's alleged representations to the Defendant, and other evidence which is relevant to Defendant's remaining claims and VB's defenses. However, with respect to the background facts set forth at ¶ 7 through ¶ 13 of the *Hughes* decision, 334 Mont. at 337-39, 147 P.3d at 188-189, the Court finds that all three elements of issue preclusion from *Boyd* and *Troutt*, *supra*, are satisfied and the Court intends to exercise its discretion and strictly limit redundant testimony and exhibits offered at trial regarding the "Nigerian scam" and the parties' related banking transactions, on the basis of collateral estoppel (issue preclusion), because the exact same issues were raised by identical parties and a final judgment on the merits was issued

in the prior adjudication establishing the facts of the Nigerian scam and the parties' banking transactions. *See Troutt*, 246 B.R. at 1157; *Holtman v. 4-G's Plumbing & Heating, Inc.* (1994), 264 Mont. 432, 872 P.2d 318, 322.

## SUMMARY JUDGMENT

The following excerpt from *Brown v. Crum (In re Brown)*, 363 B.R. 591, 603-04 (Bankr. D. Mont. 2007) sets out the standard which applies to both pending motions for summary judgment.

> Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.
>
>> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

In addition the Ninth Circuit wrote in reviewing whether to affirm summary judgment that its task is identical to the bankruptcy court: "We must view the evidence and inferences therefrom in the light most favorable to the party opposing the motion for summary judgment." *Healthcentral.com*, 504 F.3d at 788, quoting *Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.,* 741 F.2d 1555, 1559 (9th Cir. 1984). The Court in *Hughes* set out a shorter but similar standard. *Hughes*, ¶ 14. Based on the above, the Court's enquiry may end if it determines that the moving party has failed to satisfy its burden to show absence of a genuine issue of material fact, without deciding each and every contention raised by the parties in their briefs, responses and replies.

### A. VB's Motion for Summary Judgment.

VB filed its motion for summary judgment, brief, exhibits, and statement of uncontroverted facts on April 20, 2009 (Docket No. 144). Defendant filed a brief in opposition and filed a statement of genuine issues (Docket No. 164) asserting 38 issues of fact. Defendant contends that there are factual issues precluding summary judgment in favor of VB on the basis of VB's representations that the checks he had were the same as cash, and the question of negligent misrepresentation is generally one for the finder of fact.

VB contends that there are no genuine issues of fact and seeks summary judgment on four grounds, (1) that the UCC displaces common law principles in this case, (2) that Hughes cannot prove the elements of negligent misrepresentation, (3) that Hughes was more negligent that VB, and (4) that Hughes' counterclaims should be dismissed because of discovery violations.

Taking up the last ground first, both sides have accused the other of discovery violations, yet both sides have failed to follow the procedural requirements of Fed. R. Civ. P. 37(a) to seek orders to compel discovery and then, if there is failure to comply, to move for sanctions under

9

Rule 37(b)(2), which could include dismissal of claims[1]. VB has included its request for discovery sanctions in its motion for summary judgment instead of filing a "specific motion" to compel provided under Rule 37(a)(3)(B). VB's motion at pages 20 through 22 sets forth discovery responses it received from Defendant about another possible Nigerian transaction, which may supplement relevant information but is not directly related to the negligence and negligent misrepresentation claims. The Court does not look favorably upon VB's combining a motion for discovery sanctions in a motion for summary judgment. VB's fourth ground for summary judgment is denied.

VB's first ground is that the UCC duty of ordinary care displaces Defendant's remaining claims because they are inconsistent with the UCC and not specifically authorized thereby. This argument was rejected by the Montana Supreme Court in *Hughes*: "Because such communications are not addressed with specificity by the UCC, common law and equitable principles supplement the UCC and govern the legal rights and responsibilities that apply to [VB]'s representations to Hughes, upon which Hughes allegedly relied." *Hughes* at ¶ 23. The Court was even more specific in Footnote 5: "[E]ntry of summary judgment was proper with regard to breach of ordinary care in check processing, but was not proper with regard to breach of ordinary care in the making of the alleged representations about the validity of the checks." *Id.*, 334 Mont. at 344, 147 P.2d at 192. VB offered no new facts related to the alleged misrepresentations in its statement of uncontroverted facts, so entry of summary judgment on the

---

[1]Defendant argues in Docket No. 177 filed on May 14, 2009, that a motion to compel is not first necessary under the Rules before seeking sanctions. The Court disagrees, and to the extent that Defendant seeks reconsideration of the Court's Order denying Defendant's motion for leave to file a motion for sanctions, entered on May 14, 2009 (Docket No. 175), the request for reconsideration is denied.

common law and equitable claims would be no more proper now than it was in *Hughes.*

The Montana Supreme Court considered the case law, in which the bank prevailed in each case, but nevertheless concluded that "the analyses do not support the proposition that common law and equitable principles have been preempted by the UCC .... in certain circumstances, common law and equitable principles may supplement the UCC where the bank – though not violating its UCC-defined duty of ordinary care with respect to processing checks – breaches a duty to its depositor by misrepresenting the status of the check settlement process." *Hughes,* ¶ 28. VB's argument that the UCC "displaces" Defendant's remaining claims is contrary to the law of the case stated by the Montana Supreme Court, and therefore the Court concludes that VB failed to satisfy its burden for summary judgment based on its first ground.

VB's second ground for summary judgment contends that Hughes' statement of facts, even if true, cannot establish negligent misrepresentation. A claim for negligent misrepresentation requires proof of the following elements:

> (1) the defendant made a representation as to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of [his or her] actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce the plaintiff to rely on it; (5) the plaintiff must have been unaware of the falsity of the representation and he must have been justified in relying upon the representation; and (6) the plaintiff, as a result of his reliance, must sustain damage.

*Cechovic v. Hardin & Associates* (1995), 273 Mont. 104, 112, 902 P.2d 520, 525.

VB argues that the alleged misrepresentations by Smith were statements of opinion not facts, that they were not untrue and were based on reasonable grounds, that they were not based on past or existing material fact, that Defendant's reliance on the collectability of the funds was

11

unreasonable because of the account agreement, that Defendant recognized his responsibility because he so readily repaid VB, that Defendant's reliance would have been of no pecuniary benefit to VB, that Defendant was not damaged as a result of his reliance on VB's misrepresentations, and Defendant has not pleaded bad faith. These contentions are matters for trial before a finder of fact, especially in light of the *Hughes* admonishment at footnote 5 that summary judgment was not proper.

VB's third ground for summary judgment is based on Defendant's comparative negligence. VB admits Montana case law in *Cechovic*, 273 Mont. at 113, 902 P.2d at 526, states that the question of negligent misrepresentation is generally for the finder of fact, but argues that it may be decided as a matter of law when the facts are so clear so as to permit only one conclusion, and reasonable minds cannot differ where the plaintiff acts contrary to information in his possession or without any reason to justify his conduct. This Court agrees with *Cechovic* that disputed issues under negligent misrepresentation and comparative negligence are appropriately left for the finder of fact after trial. There being disputed factual issues remaining, the Court concludes that VB failed to satisfy its burden under Rule 56 that there is no genuine issue of fact and that it is entitled to judgment dismissing Defendant's claims for negligence and negligent misrepresentation as a matter of law.

### B. Defendant's Motion for Partial Summary Judgment.

Defendant's motion for partial summary judgment (Docket No. 145) asks that VB's affirmative defenses of comparative negligence and assumption of risk be dismissed because of the negligence and negligent misrepresentations of VB's employees made to the Defendant and his spouse. Defendant argues that because of VB's representations, his own comparative

negligence and assumption of risk are irrelevant, and states at page 7, without citation to supporting authority, that VB's defense of "contributory negligence also fails as a matter of law because it is not a recognized defense to claims which sound in negligence." The Court disagrees.

With respect to assumption of risk, Defendant's motion is moot because assumption of risk is no longer available as a separate affirmative defense in negligence cases, having been merged into the general scheme of liability assessment by adoption of a system of comparative negligence, "in which the conduct of the parties must be compared based on evidence of negligence and contributory negligence, as established by reasonable person standards." *Lewis v. Puget Sound Power & Light Co.*, 2001 MT 145, ¶ 25, 306 Mont. 37, 42, 29 P.3d 1028, 1032 (2001), citing *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 477, 872 P.2d 782, 790[2]. Thus, under *Lewis* Defendant's motion for partial summary judgment with respect to VB's affirmative defense of assumption of risk is moot and must be denied.

"Comparative negligence compares the conduct of the parties 'based on evidence and contributory negligence, as established by reasonable and prudent person standards.'" *Giambra v. Kelsey*, 2007 MT 158, ¶ 44, 338 Mont. 19, 34,¶ 44, 162 P.3d 134, 144, ¶ 44, quoting *Lewis* ¶ 25 and *Faulconbridge v. State,* 2006 MT 198, ¶ 99, 333 Mont. 186, ¶ 99, 142 P.3d 777, ¶ 99. In 2008 the Montana Supreme quoted *Giambra* and succinctly explained Montana's comparative negligence rule in *Peterson v. Eichhorn*, 2008 MT 250, ¶¶ 31, 32, 344 Mont. 540, 549, ¶¶ 31, 32,

---

[2]In *Lewis* the court reversed the trial court's grant of summary judgment regarding future damages, noting that "the question is one of fact and should have been left for the jury. *Id.* at ¶ 25.

189 P.3d 615, 623-24, ¶¶ 31, 32:

> Under the old contributory negligence rule, a plaintiff could not recover if the plaintiff were negligent in any degree. *Reed v. Little*, 209 Mont. 199, 205, 680 P.2d 937, 940 (1984). Montana, however, has adopted a comparative negligence scheme. See § 27-1-702, MCA. Under that scheme, a plaintiff's contributory negligence is a defense to the charge of negligence, but contributory negligence does not bar the plaintiff from recovering damages "if the contributory negligence was not greater than the negligence of the person or the combined negligence of all persons against whom recovery is sought." Section 27-1-702, MCA. In other words, recovery is barred only if the plaintiff is found to be greater than 50 percent negligent. *Giambra v. Kelsey*, 2007 MT 158, ¶ 45, 338 Mont. 19, ¶ 45, 162 P.3d 134, ¶ 45.
>
> Furthermore, even when a defendant is negligent as a matter of law, the issue of contributory negligence on the part of the plaintiff and the degree of comparative negligence, if any, is normally an issue for the jury or fact-finder to resolve. *Pierce v. ALSC Architects, P.S.*, 270 Mont. 97, 107, 890 P.2d 1254, 1260 (1995); *see also Giambra*, ¶ 51 (stating that Montana's comparative negligence scheme requires "the fact-finder" to consider the negligence of the claimant, injured person, defendants, and third-party defendants and apportion negligence liability accordingly). Whether a plaintiff was contributorily negligent is a question for the fact-finder, unless reasonable minds could not draw different conclusions from the evidence. *See e.g. Stenberg v. Beatrice Foods Co.*, 176 Mont. 123, 126-27, 576 P.2d 725, 727-28 (1978); *Hart-Anderson v. Hauck*, 239 Mont. 444, 447-48, 781 P.2d 1116, 1117-18 (1989).

Defendant argues that, even if it is assumed that he was negligent by becoming ensnared in the Nigerian scam, that occurred prior to VB's negligence and negligent misrepresentations and should bar VB's affirmative defense. This argument is contrary to the above-quoted Montana case law that, even where a party is negligent as a matter of law, the issues of contributory negligence and degree of comparative negligence are issues for the fact finder to resolve. *Id.* Whether Defendant was contributorily negligent before or after the alleged negligence and/or negligent misrepresentations by VB are questions for the fact finder.

*Peterson* provides the following explanation of negligence:

14

> Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstances. *Barr v. Great Falls Int'l Airport Authority*, 2005 MT 36, ¶ 41, 326 Mont. 93, ¶ 41, 107 P.3d 471, ¶ 41. To maintain an action in negligence, the plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted. *See Willden v. Neumann*, 2008 MT 236, ¶ 14, 344 Mont. 407, ¶ 14, 189 P.3d 610, ¶ 14; *Bonilla v. University of Montana*, 2005 MT 183, ¶ 14, 328 Mont. 41, ¶ 14, 116 P.3d 823, ¶ 14; *Massee v. Thompson*, 2004 MT 121, ¶ 30, 321 Mont. 210, ¶ 30, 90 P.3d 394, ¶ 30.
>
> As noted, actionable negligence arises only from the breach of a legal duty. Therefore, in order for there to be a genuine issue of material fact in a negligence case, there must be a duty imposed on the defendant and allegations which, if proven, would support a finding of a breach of the duty. *Richardson v. Corvallis Public School Dist. No. 1*, 286 Mont. 309, 313, 950 P.2d 748, 751 (1997). Furthermore, although negligence actions ordinarily involve factual issues which make summary judgment inappropriate, if the plaintiff fails to offer proof on any one of the four elements of negligence, then summary judgment in favor of the defendant is proper. *Singleton v. L.P. Anderson Supply Co.*, 284 Mont. 40, 43-44, 943 P.2d 968, 970 (1997); *accord Fabich v. PPL Montana*, LLC, 2007 MT 258, ¶ 23, 339 Mont. 289, ¶ 23, 170 P.3d 943, ¶ 23.

*Peterson*, ¶¶ 23, 24

In a 2009 case the United States District Court for the District of Montana quoted the rule in *Peterson*: "Whether a plaintiff was contributorily negligent is a question for the fact-finder, unless reasonable minds could not draw different conclusions from the evidence." *Jensen*, 2009 WL 82221, *7, quoting *Peterson*, 189 P.3d at 623. The Court concludes that Defendant failed to satisfy his burden under Rule 56 to show that there is no genuine issue of material fact and that he is entitled to summary judgment as a matter of law dismissing VB's affirmative defense of contributory negligence.

## VB's Motion in Limine

VB's motion in limine (Docket No. 130) seeks to exclude expert witness Shea from

15

testifying at trial, and to limit Robinson's testimony. It is accompanied by Shea's expert report and rebuttal reports. VB argues that there was not proper disclosure of Shea's testimony and it is not relevant to the remaining issues, and thus should be forbidden at trial under Fed. R. Civ. P. 37(c)(1). VB argues that Shea was excluded from testifying by the district court, which was affirmed in *Hughes*, ¶ 45, that the Defendant failed to demonstrate that Shea possesses any knowledge of the reasonable commercial standards prevailing amount Montana's banks nor that she has knowledge of procedures that fall within Montana's general banking usage, and that nothing has changed and Shea's reports do not address the issues remaining with respect to negligence and negligent misrepresentation, but instead addresses matters not at issue such as bad faith and breach of fiduciary duty. VB argues that Shea's surrebuttal opinions regarding the misrepresentations are new, and VB has had no opportunity to respond, and that Shea's opinion is contrary to Defendant's other expert.

Next, VB argues that Shea's opinion about what certain words meant to the Defendant lacks foundation and is not testimony by experts defined at Fed. R. Evid. 702, and that Defendant's failure to disclose Shea's new opinion was neither harmless nor substantially justified because VB has not had the opportunity to depose Shea again regarding her new opinion and will have to conduct another deposition in Texas.

With respect to Defendant's other expert, Robinson, VB moves to limit her opinion to a hypothetical question and prohibit her from testifying as to the Defendant's state of mind or whether other witness testimony is untrue, on the grounds that exceeds what an expert can testify to under the rules.

Defendant opposes VB's motion in limine. He contends that the state court excluded

16

Shea under the UCC standard of care which is inapplicable to the remaining claims, which involve a national standard of care for banks. With respect to his negligent misrepresentation claim, Defendant concedes at page that there is no requirement for expert testimony and that it is a question resolvable by common knowledge, but later argues that Shea's opinion relates to an essential element of his negligent misrepresentation claim related to bad faith and failure to exercise ordinary care in the detection and prevention of criminal activity.

Defendant argues that the Court authorized a rebuttal report by Order Docket 112, and that he submitted Shea's rebuttal report on time on February 6, 2009. He argues that if Shea's rebuttal report is considered a surrebuttal is it harmless and substantially justified because it was authorized by the Court and addressed the remaining issues. With respect to Defendant's state of mind, he argues that he will testify about that himself and will not rely on expert opinion. However, he argues that Shea and Robinson will testify whether they believe Valley Bank's representations were true and whether it had reasonable grounds for believing they were true.

Whether to grant or deny a motion in limine is a matter within the sound discretion of the court. *State v. Dunning*, 2008 MT 427, ¶ 21, 347 Mont. 443, 447, ¶ 21, 198 P.3d 828, 831, ¶ 21; *State v. Brasda*, 2003 MT 374, ¶ 14, 319 Mont. 146, ¶ 14, 82 P.3d 922, ¶ 14 (citations omitted). Many of the issues raised by VB in support of its motion in limine are ameliorated by the fact that the Court in this adversary proceeding is the trier of fact, not a jury.

The determination of the weight to be given expert testimony or evidence is a matter within the discretion of the trier of fact – which in a bench trial like the instant is the bankruptcy court. *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990); *Arkwright Mutual Insurance Co. v. Gwinner Oil Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997); Barry Russell, *Bankruptcy Evidence*

*Manual*, 2000 Ed., § 702.2; 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 702.05[2][a] (2nd ed. 2002).

In addition, a trial judge is not disabled from screening expert testimony offered pursuant to Fed. R. Evid. 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). "To the contrary, under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.; United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997), *cert. denied*, 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997); Russell, *Bankruptcy Evidence Manual*, 2000 Ed., § 104.1. The trial judge's gatekeeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical and "other specialized" knowledge. *U.S. v. Mendoza-Paz*, 286 F.3d 1104, 1112 (9th Cir. 2003), *cert. denied*, 537 U.S. 1038, 123 S.Ct. 573, 154 L.Ed.2d 459 (2002); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Because this is a bench trial, and Shea has long been disclosed as an expert witness, and submitted her rebuttal report by the February 6, 2009, deadline set by this Court's Order Docket No. 112, and Defendant's remaining claims for negligence and negligent misrepresentation have been known to VB since before the Supreme Court's decision in *Hughes*, the Court deems it a more appropriate exercise of its discretion to deny VB's motion in limine. VB is free to object to Shea's or Robinson's testimony at trial, and as stated above the Court has no intention of revisiting dismissed UCC claims or issues which are subject to issue preclusion by the final decision in *Hughes*. The Court will ensure that any opinion testimony by an expert is not only relevant but reliable, and ultimately the Court will determine the weight to be given to any expert

witness's opinion.

## Defendant's Motion for Protective Order

The last pending motion is Defendant's motion for protective order (Docket No. 133) to prevent a third deposition of the Defendant, and VB's objection thereto (Docket No. 153). Defendant bases his motion on Rule 26(c), to protect a party from undue expense, contending that Defendant has had to pay for two depositions. Defendant argues that his testimony has not changed since his original deposition, and there is no reason VB could not have gained all information it needed from the previous two depositions. If a third deposition is allowed, Defendant requests that it be limited to avoid cumulative and oppressive questioning on the same matters which were discussed in the previous two depositions.

VB's objection (Docket No. 153), states that it is entitled to depose Defendant regarding information obtained since his second deposition on February 18, 2005. VB contends that Defendant did not produce documents and correspondence which he was ordered to compel regarding the full extent of his international dealings with scam artists, and VB should be allowed to depose him regarding information learned after the second deposition.

VB's third deposition of the Defendant is scheduled to take place in Ronan, where Defendant lives, on May 21, 2009 (Docket No. 162). It appears from VB's motion that it agrees that its third deposition will be limited to information obtained since his second deposition, as the Defendant requests. If the Defendant does not have possession of documents or correspondence which VB has requested, it appears to the Court that fact can be elicited in a short period of time and VB can move on to ask questions of the Debtor under oath regarding his personal knowledge of his international transactions and other information which he did not disclose before. VB will

19

then be free to use that testimony for impeachment or otherwise at trial, along with the Defendant's responses to discovery and earlier deposition testimony.

Since VB agrees to limit the scope of its third deposition, and has accommodated the Defendant by scheduling the third deposition where he lives, the Court finds that Defendant has not satisfied his burden of proof as the moving party to show good cause for the Court to issue an order to protect the Defendant from undue burden or expense as required under Rule 26(c).

**IT IS ORDERED** a separate order shall be entered in conformity with the above, (1) denying Valley Bank's motion for summary judgment (Docket No. 144); (2) denying Defendant's motion for partial summary judgment (Docket No. 145); (3) denying Valley Bank's motion in limine to exclude expert witnesses (Docket No. 130) without prejudice to VB's right to object at trial; (4) denying Defendant's motion for a protective order (Docket No. 133), subject to VB's voluntary limitations of the scope of its third deposition of the Defendant; and (5) denying Defendant's request for reconsideration of its motion for leave to file sanctions motion (Docket No. 177).

                                           BY THE COURT

                                           /s/ Ralph B. Kirscher
                                           HON. RALPH B. KIRSCHER
                                           U.S. Bankruptcy Judge
                                           United States Bankruptcy Court
                                           District of Montana